# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1371

_____

United States of America,

*Plaintiff - Appellee,*

v.

Ralph Chavous Duke, also known as Plookie, also known as Plukey,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: February 15, 2019
Filed: July 31, 2019

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Ralph Duke was sentenced in 1990 to a term of life imprisonment plus forty years for committing several serious drug trafficking and firearms offenses. A district court later vacated his convictions on the firearms counts in light of an intervening judicial decision, and the case was returned to the District of Minnesota for

resentencing. After considering the matter anew, the district court[1] determined an advisory guideline range of 360 months to life and sentenced Duke to a term of life imprisonment. Duke argues that the district court made procedural errors and imposed a substantively unreasonable sentence, but we disagree and affirm.

Duke controlled all phases of a drug trafficking organization in the Minneapolis/St. Paul area from 1984 through June 1989. He purchased cocaine primarily from a Colombian-affiliated source in Houston or from sources in Los Angeles. The cocaine was transported to Minnesota in vehicles owned by Duke and driven by younger members of his drug trafficking organization. Duke then distributed kilograms of cocaine to dealers for resale at the street level in smaller quantities. Duke laundered the proceeds of drug sales by purchasing homes and cars in the names of others. All told, Duke and his organization trafficked over fifty kilograms of cocaine before law enforcement interrupted their operations. When Duke was apprehended in May 1989, officers found two loaded handguns in his bedroom and two assault shotguns and two AR-15 semi-automatic rifles in his residence. The government charged at least twenty-five people as a result of the investigation of Duke's organization.

In 1989, a jury convicted Duke on eleven charges arising from the drug trafficking activity. The district court sentenced him to the statutory maximum penalty on each count. Three counts carried concurrent terms of life imprisonment: engaging in a continuing criminal enterprise (count 1), *see* 21 U.S.C. § 848 (1988), aiding and abetting the attempt to possess with intent to distribute twenty kilograms of cocaine (count 2), *see id.* §§ 841(a)(1), (b)(1)(A), 846; 18 U.S.C. § 2 (1988), and conspiracy to possess with intent to distribute five kilograms or more of cocaine (count 32), *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (1988). Five other drug

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

trafficking counts carried shorter terms that ran concurrent with the life sentences. Three firearms convictions resulted in consecutive terms of thirty, five, and five years, respectively, for a total of forty years' imprisonment.[2]

On appeal, this court affirmed the judgment in all respects but one: the court ruled that the convictions on count 1 (continuing criminal enterprise) and count 32 (cocaine trafficking conspiracy) violated the Double Jeopardy Clause and remanded with instructions to vacate one of those convictions. *United States v. Duke*, 940 F.2d 1113, 1120-21 (8th Cir. 1991). The district court vacated Duke's conviction on count 1, but the life sentence was unchanged.

In 2016, the district court reduced Duke's sentence under 18 U.S.C. § 3582(c)(2), based on a retroactive amendment to the sentencing guidelines that made certain drug offenders eligible for a two-level decrease in their base offense level. *See* USSG Supp. to App. C, Amend. 782 (2014); USSG § 1B1.10(a)(1), (d), (e)(1) (2014). In Duke's case, the two-level decrease yielded a new guideline range of 292 to 365 months for the drug trafficking charges, and the court sentenced him to concurrent terms of 365 months on each of the seven drug convictions. The consecutive terms for the firearms offenses were unaffected, so Duke's new sentence as of 2016 was 365 months plus forty years.

Duke then petitioned for a writ of habeas corpus under 28 U.S.C. § 2241 in the Central District of Illinois, invoking *Bailey v. United States*, 516 U.S. 137 (1995). The court determined that *Bailey* required vacatur of Duke's firearms convictions,

---

[2]The five drug trafficking counts charged aiding and abetting the possession with intent to distribute smaller quantities of cocaine (counts 4, 5, 6, 7, and 8), *see* 21 U.S.C. § 841(a)(1), (b)(1)(B) (1988); 18 U.S.C. § 2 (1988), and the three firearms counts alleged using or carrying a firearm during and in relation to a drug trafficking crime (counts 28, 29, and 30), *see* 18 U.S.C. § 924(c)(1) (1988).

and then transferred the case to the District of Minnesota for resentencing. *See Duke v. Thompson*, No. 17-cv-1024, 2017 WL 4397950, at *4-7 (C.D. Ill. Sept. 29, 2017).

With the firearms convictions vacated, the district court recalculated Duke's advisory guideline range as 360 months to life imprisonment—the same range that applied at the original sentencing in 1990. Although the retroactive guideline amendment reduced the base offense level by two levels from the original hearing, a firearms adjustment under USSG § 2D1.1(b)(1) now applied and offset the reduction. The court again sentenced Duke to the statutory maximum terms on each count: a term of life imprisonment on each of counts 2 and 32, and a term of forty years on each of counts 4 through 8, all to run concurrently.

On appeal, Duke first argues that the district court committed procedural error at the resentencing by failing to consider adequately the sentencing factors under 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 51 (2007). He complains that the court "failed to address the detailed assessment of § 3553(a) factors offered by the defense." But a district court need not expressly address every § 3553(a) factor if the record shows that they were considered. *United States v. Clayton*, 828 F.3d 654, 657 (8th Cir. 2016). The court here received and read Duke's assessment of the factors in his sentencing memorandum, heard oral arguments at the hearing about the factors, and specifically referenced some of the factors when explaining the chosen sentence. We presume that the court considered the arguments before it, *see United States v. Wisecarver*, 644 F.3d 764, 774 (8th Cir. 2011), and we are satisfied that the district court was aware of the relevant factors and considered them in imposing sentence.

Duke also complains that the district court provided an inadequate explanation for the chosen sentence. *See Gall*, 552 U.S. at 50. Assuming without deciding that Duke raised a proper objection to the adequacy of the court's explanation, we conclude that there was no procedural error.

In explaining its decision to impose a life term, the court remarked that while the supportive letters submitted on Duke's behalf were "heartfelt and compelling," they could not "undo the serious crimes committed by the Defendant over the course of many years during which he not only flooded his community with drugs but also corrupted numerous young people, many of whom were his family." The court emphasized "the staggering magnitude of the criminal activity involved," and concluded as follows: "The Court commends the Defendant for his rehabilitative efforts while in prison and sincerely hopes that the Defendant has indeed changed, but the Court simply cannot conclude that he should be released from prison." The court's reason for choosing the life sentence was evident: the seriousness of Duke's crimes justified that punishment and outweighed any mitigating factors that favored a lesser term. The record provides a basis for meaningful appellate review of the sentence, and nothing more is required.

Duke objects that the district court failed to provide an "individualized" explanation for the sentence, because the court supposedly relied on a boilerplate "script" that it used at other sentencing hearings. He highlights the court's statement that it had "taken into account the nature and circumstances of the instant offenses, as well as the history and characteristics of the Defendant and [found] that the sentence imposed is sufficient but not greater than necessary to afford adequate deterrence to future criminal conduct." That the court would echo language found in § 3553(a) is neither surprising nor inappropriate. The court is required to consider the § 3553(a) factors in every case, and there is nothing wrong with using the same words in each case to report that this obligation was discharged. Here, the court went on to provide an individualized explanation for Duke's sentence by discussing "the staggering magnitude" of Duke's crimes and Duke's efforts at rehabilitation.

Duke next argues that the court did not provide *enough* individualized discussion. Citing the dictate that a district court "must explain [its] conclusion that . . . an unusually harsh sentence is appropriate in a particular case with sufficient

-5-

justifications," *id.* at 46, Duke contends that the harsh sentence of life imprisonment required more explanation. An "unusually harsh" sentence in this context, however, means a sentence based on an upward "departure from the Guidelines" that is "unusual" because it is outside the heartland represented by the advisory range. *Id.* Where, as here, "a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita v. United States*, 551 U.S. 338, 356-57 (2007). The court sentenced Duke within the advisory range, based on evidence that Duke was the leader of a "huge" five-year cocaine trafficking operation that "could easily sell seventy-five kilograms in two or three months." *See Duke*, 940 F.2d at 1115-16. Multiple undisputed paragraphs in the presentence report catalogue details of Duke's extensive criminal conduct. Given the information readily available in the record, it was not incumbent on the district court to spell out "the staggering magnitude" of Duke's crimes in greater detail.

Duke also insists that "a more fulsome statement of reasons was necessary" to provide assurance that the judge "did not simply adopt the reasoning he applied when he sentenced Mr. Duke in 1990." Duke asserts that because the guidelines were mandatory in 1990, but now are advisory after *United States v. Booker*, 543 U.S. 220, 233-34 (2005), the court was obliged to say something more and different to justify imposing an identical sentence. But the guideline range was 360 months to life at both proceedings, and Duke asked for a sentence of time served (396 months) at the resentencing hearing. The court thus faced the same question each time: where within the range to impose sentence. The advisory nature of the guidelines did not require a different explanation for why the court selected a sentence at the top of the guideline range. The court *did* address the intervening circumstance of Duke's conduct in prison, and explained that his rehabilitative efforts were insufficient to overcome the seriousness of the crimes. We thus conclude that there was no procedural error at sentencing.

Duke next contends that his life sentence is substantively unreasonable. The substantive reasonableness of a sentence is reviewed under a deferential abuse-of-discretion standard. *Gall*, 552 U.S. at 51. We presume that a sentence within the advisory guideline range is reasonable. *United States v. Lasley*, 832 F.3d 910, 914 (8th Cir. 2016).

Duke's life sentence was within the advisory range of 360 months to life, but Duke urges that we should not apply a presumption that the sentence is reasonable. He argues that "a life sentence is qualitatively different from a term of years." But the basis for the presumption is the district court's agreement with the recommendation of the Sentencing Commission, *see Rita*, 551 U.S. at 350-51, and that circumstance carries just as much weight when the recommended sentence is life rather than a term of years. We have thus applied the presumption of reasonableness to life sentences. *See Lasley*, 832 F.3d at 914.

Duke points out that he already had served the equivalent of a 396-month sentence, so the district court was constrained to choose among sentences within the guideline range of 360 months to life. That circumstance, however, simply means that the district court was choosing among sentences that would be presumed reasonable on appeal; it is not a reason to forego the presumption. We can still meaningfully review a sentence within the range for reasonableness. Duke also asserts that the sentencing guidelines governing drug offenses lack an empirical basis because they were derived from statutory penalties dictated by Congress. But even where a guideline range does not reflect the empirical analysis of the Commission, we still apply the presumption of reasonableness. *See United States v. Werlein*, 664 F.3d 1143, 1146 (8th Cir. 2011) (per curiam). If the guideline was effectively dictated by Congress, then the district court's agreement with the guideline range signals an accord with Congress's view, and that too is a "real-world circumstance" that suggests reasonableness. *See United States v. Ultsch*, 578 F.3d 827, 831 (8th Cir. 2009); *cf. Rita*, 551 U.S. at 350-51.

On the question of substantive reasonableness, we conclude that the district court did not abuse its direction in selecting a term of life imprisonment. Duke's principal complaint is that the court "gave undue weight to the seriousness of a thirty-year-old offense" over his "exceptional institutional conduct over the last 29 years, lack of criminal history, age, medical history, family ties, rehabilitation, remorse, and low risk of recidivism." When it comes to weighing the § 3553(a) factors, however, the district court has wide latitude to assign some factors greater weight than others. *United States v. Johnson*, 916 F.3d 701, 703 (8th Cir. 2019). Duke's crimes were serious: he was the leader of a large-scale drug trafficking conspiracy that introduced hundreds of kilograms of cocaine into the community, and he possessed several firearms in connection with his drug trafficking offenses. The district court acted within its discretion in concluding that the gravity of Duke's crimes and the need for adequate general deterrence outweighed other factors and warranted a sentence at the top of the range.

Duke maintains that the district court gave insufficient weight to his rehabilitative efforts in prison. It is true that a court at resentencing may consider evidence of postsentencing rehabilitation, and that evidence may, in an appropriate case, support a downward variance from the guideline range or a sentence at the bottom of the applicable range. *See Pepper v. United States*, 562 U.S. 476, 481 (2011). But a district court is not *required* to reduce a defendant's sentence based on a showing of postsentencing rehabilitation; it is simply another factor for the court to consider under § 3553(a). *See id.* at 505 n.17. Given the magnitude of Duke's offense conduct, it was reasonable under our deferential review for the court to conclude that his rehabilitative efforts did not warrant a sentence below the top of the guideline range.

The judgment of the district court is affirmed. Duke's *pro se* motion to remand is denied.

_____